## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMBERLY H. F., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-CV-33-JFJ |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kimberly H. F. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.  For reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits.  Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I.    General Legal Standards and Standard of Review

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

On March 1, 2020, Plaintiff, then a 52-year-old female, protectively applied for a period of disability and disability insurance benefits under Title II. R. 10, 231-232. Plaintiff alleges that she has been unable to work since February 18, 2019, due to shingles, post-traumatic stress disorder ("PTSD"), insomnia, migraines, and weakened immune system. R. 231, 265. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 120-123, 126-131. Plaintiff then requested a hearing before an ALJ, and ALJ Michael Mannes conducted a telephonic hearing on June 22, 2022. R. 33-77, 133-134. The ALJ issued a decision on August 2, 2022, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national

economy.  R. 10-20.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 5.

The ALJ found Plaintiff's date last insured was December 31, 2024.  R. 12.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 18, 2019.  *Id.*  At step two, the ALJ found that Plaintiff had the following severe impairments: trauma and stress disorder, depressive disorder, bipolar disorder, anxiety, obsessive-compulsive disorder, and chronic infections of the skin and mucous membranes.  R. 12.  The ALJ found Plaintiff's migraines were non-severe.  R. 13.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  *Id.*

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform "medium work as defined in 20 C.F.R. § 404.1567(c)" with the following limitations:

> occasionally climbing ramps or stairs; never climbing ladders, ropes or scaffolds; frequently balancing; occasionally stooping or crawling; must avoid frequent exposure to unprotected heights and dangerous machinery; able to understand remember and carry out simple and detailed tasks with routine supervision and make related judgments; able to attend for two-hour periods with routine work breaks and pace and persist for an eight-hour workday and 40 hour work week; able to interact appropriately with supervisors, coworkers and the general public for incidental work purposes; able to adapt to a work setting and some forewarned changes in a usually stable work setting.

R. 14.  At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  R. 18.  However, based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as Laundry Worker I, Industrial Sweeper Cleaner, and Floor Waxer.  R. 18-19.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of

Occupational Titles ("DOT").  R. 19.  Accordingly, the ALJ concluded Plaintiff was not disabled

from the alleged onset date of February 18, 2019, through the date of the decision.  R. 19-20.

## III.    Issues

Plaintiff raises three points of error on appeal: (1) the ALJ failed to provide a narrative

discussion explaining how the evidence supports Plaintiff's RFC; (2) the ALJ failed to resolve a

conflict between the VE's testimony and the DOT regarding Plaintiff's stooping limitation; and

(3) the ALJ's consistency analysis was improper.  ECF No. 9.  The Court finds the ALJ committed

legal error by failing to resolve a conflict between the VE's testimony and the DOT before relying

on the VE's testimony as support for his determination that Plaintiff could perform the job of Floor

Waxer.  This error is harmful, because a significant number of jobs does not remain if the Floor

Waxer job is excluded.  The Court does not reach Plaintiff's other arguments.

## IV.    Analysis

### A.    Compatibility of RFC with Jobs Identified by VE

Plaintiff contends the ALJ erred in concluding that his RFC is compatible with the Floor

Waxer job because an unresolved conflict exists between the VE's testimony and the DOT

regarding Plaintiff's stooping limitation.  ECF No. 9 at 11-12.  An "ALJ must investigate and elicit

a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ

may rely on the expert's testimony as substantial evidence to support a determination of

nondisability."  *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); Social Security Ruling

("SSR") 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) ("If the VE's . . . evidence appears to

conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent

conflict.").  "The conflict must be explained irrespective of how the conflict was identified, and

regardless of whether the [VE] testifies to a discrepancy." *Cain v. Berryhill*, No. 16-CV-00640-GKF-FHM, 2018 WL 1247876, at *3 (N.D. Okla. Mar. 9, 2018) (quotations omitted).

At Plaintiff's administrative hearing, the ALJ posed three hypothetical questions to the VE. R. 72-75. The first hypothetical asked the VE to consider an individual with the same age, education, work history, and RFC as Plaintiff. R. 72. The VE testified that such individual could not perform Plaintiff's past relevant work, but could perform the jobs of Laundry Worker I (DOT # 361.684-014), Industrial Sweeper Cleaner (DOT # 389.683-010), and Floor Waxer (DOT # 381.687-034). R. 72-73. The ALJ then asked the VE if his testimony was consistent with the DOT, and the VE answered, "Yes." R. 73. Based on this testimony, the ALJ concluded Plaintiff could perform the jobs of Laundry Worker I, Industrial Sweeper Cleaner, and Floor Waxer. R. 18-19. The ALJ found these jobs, which totaled 234,000 jobs, existed in significant numbers in the national economy. R. 19 ("[T]he claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.")

Although neither the VE nor the ALJ acknowledged a conflict between the VE's testimony and the DOT, a conflict exists that the ALJ was required to resolve. According to the DOT and its companion publication,[2] the Floor Waxer job requires stooping "frequently." DOT 381.687-034. This is inconsistent with Plaintiff's RFC limitation of only stooping "occasionally." R. 14. Under the DOT, "occasionally" is defined as occurring "up to 1/3 of the time" and "frequently" is defined as occurring "from 1/3 to 2/3 of the time." DOT, App. C, 1991 WL 688702. "Occasionally" is thus not consistent with something occurring from 1/3 to 2/3 of the time. The ALJ neither

---

[2] The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") is the companion publication to the DOT. *See* SSR 00-4p, at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").

acknowledged this conflict nor elicited testimony from the VE to explain the discrepancy, violating *Haddock* and SSR 00-4p.   Accordingly, the ALJ's step-five determination that Plaintiff can perform the Floor Waxer job is unsupported by substantial evidence.[3]

**B.     Sufficient Number of Jobs in the National Economy**

Although the ALJ erred in failing to elicit a reasonable explanation for the conflict between Plaintiff's RFC and the stooping limitation required to perform the Floor Waxer job, the ALJ's error could still be found harmless if the other positions identified exist in significant numbers in the national economy and do not conflict with Plaintiff's RFC.   *See Cain*, 2018 WL 1247876, at *4; 42 U.S.C. § 423(d)(2)(A).   The VE identified two other jobs that Plaintiff could perform: Laundry Worker I and Industrial Sweeper Cleaner.   R. 19, 72-73.   The Commissioner argues that, even if the Floor Waxer job is eliminated, the remaining jobs comprise a significant number of jobs in the national economy that Plaintiff can perform.   ECF No. 13 at 14-15.

The VE testified at the hearing that there are approximately 100,000 Laundry Worker I jobs and 16,000 Industrial Sweeper Cleaner jobs in the national economy.   R. 72-73.   The ALJ made no specific finding that these two jobs separately existed in significant numbers in the national economy, instead relying on the aggregate number of all three jobs—234,000.   *See* R. 19. Thus, to affirm the ALJ's decision, the Court would have to make the determination that the total

---

[3] Plaintiff also contends an unresolved conflict exists between her RFC and the job of Industrial Sweeper Cleaner.   ECF No. 9 at 12.   Plaintiff argues the job description of Industrial Sweeper Cleaner is inconsistent with Plaintiff's RFC limitation of no work that includes "frequent exposure to unprotected heights and dangerous machinery."   *Id.* (citing R. 14).   The Court finds this argument unpersuasive.   The DOT/SCO clearly states that exposure to moving mechanical parts and high, exposed places is "not present" and "does not exist" for the job of Industrial Sweeper Cleaner.   *See* DOT 389.683-010.   *See also Marlayne C. v. Kijakazi*, No. CV 22-08687, 2023 WL 8896873, at *2 (C.D. Cal. Nov. 21, 2023) (rejecting same argument but for job of Industrial Cleaner, DOT # 381.687-018).

number of Laundry Worker 1 jobs and Industrial Sweeper Cleaner jobs—116,000—constitutes a significant number of jobs in the national economy.

There is no magic number that qualifies as a "significant number" of jobs. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Tenth Circuit has made it clear that "judicial line-drawing" in the context of deciding that a particular number of jobs is significant under the circumstances "is inappropriate." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004). Rather, the evaluation of "numerical significance," which "entails many fact-specific considerations requiring individualized evaluation," "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (quotations omitted). Only in "the right exceptional circumstance," in which no reasonable administrative factfinder could have resolved the factual matter in any other way, is it appropriate for the district court "to supply a missing dispositive finding under the rubric of harmless error." *Id.* at 1145.

The Commissioner argues the Court should find that 116,000 is a "significant number" of jobs, citing three unpublished Tenth Circuit cases as support. ECF No. 13 at 14-15 (citing *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 794 (10th Cir. 2013) (suggesting that 80,000 national jobs is a significant number); *Botello v. Astrue*, 376 F. App'x 847, 850-51 (10th Cir. 2010) (same but with 67,250 national jobs); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (same but with 11,000 national jobs)). However, the Court finds the Commissioner's argument unpersuasive for two reasons. First, the Tenth Circuit's unpublished opinions on this issue have been inconsistent. *Compare Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (declining to find that two positions, which together comprised 190,000 to 210,000 jobs nationally, were present in significant numbers) *with Rogers*, 312 F. App'x at 142 (implying that 11,000 national jobs was

a significant number).  *See also Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (noting that 152,000 is "the lowest number of jobs" the Tenth Circuit has found to be sufficient for harmless error application) (citing *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008)).  Second, judges in this district have consistently declined to find that numbers in the 116,000 range constitute a significant number of jobs.  *See, e.g., Terry T. v. Saul*, No. 19-CV-0684-CVE-CDL, 2021 WL 981284, at *5 (N.D. Okla. Mar. 16, 2021) (rejecting Commissioner's argument that 108,000 jobs is significant as a matter of law); *Cain*, 2018 WL 1247876, at *5 n.7 (collecting cases to demonstrate that "the majority of courts in this district considering [jobs in numbers up to 195,000] decline to determine numerical significance as a matter of law").

Given the guidance from this district, as well as the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in "exceptional" circumstances, the Court declines to apply harmless error to conclude that 116,000 jobs is a significant number as a matter of law.  Put differently, the Court cannot conclude that "no reasonable administrative factfinder . . . could have resolved the factual matter in any other way."  *Allen*, 357 F.3d at 1145.  As a result, the ALJ's step-five error is not harmless.

## V.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 15th day of February, 2024.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

9